### R. L. TARIN V. STATE

No. 29,060. June 26, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) October 16, 1957.

*Joe Burkett,* (on appeal) San Antonio, for appellant.

*Hubert W. Green, Jr.,* Criminal District Attorney, *H. F. Garcia and Edward R. Finck, Jr.,* Assistants Criminal District Attorney, San Antonio, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for forgery; the punishment, four years in the penitentiary.

Armando Castillo, a witness for the state, testified that he had worked for the appellant who was engaged in installing heating and air conditioning equipment, and that he helped him install a furnace in the residence of Mrs. B. A. Marlow just prior to April 1, 1955. He identified a check at the trial marked State's Exhibit No. 1, dated April 7, 1955, in the sum of $49.40, payable to Julio Flores, signed Mrs. B. A. Marlow as maker, endorsed Julio Flores, and drawn on the National Bank of Fort Sam Houston, San Antonio, Texas, which was introduced in evidence. He testified that on April 7, 1955, he was present when the appellant telephoned the National Bank of Fort Sam Houston and heard him inquire of the bookkeeper "if there was sufficient funds to cash this particular check," and then saw the appellant write out the check marked State's Exhibit No. 1 with his left hand; that appellant delivered the check to him, then went with him to cash the check; that he bought some merchandise, endorsed the check by signing the name Julio Flores, received the difference in money, and then gave both the merchandise and the money to the appellant.

The check marked State's Exhibit No. 1 conforms to the one described in the indictment and on which the state relies for a conviction.

The witness Castillo identified four other checks which were introduced in evidence without objection and marked State's Exhibits Nos. 2, 3, 4, and 5 and dated respectively April 7, March 31, March 30, and April 2, 1955, which he testified that the appellant wrote under similar circumstances as he did State's Exhibit No. 1 and delivered to him which he cashed and then gave the appellant the merchandise and money received for them.

Mrs. Homaesille Marlow testified that during 1955 she had a checking account in the National Bank of Fort Sam Houston on which she signed checks for withdrawals "Bernard A. Mar-

low, Jr. or Mrs. B. A. Marlow," and that on her husband's personal account he signed checks "Mr. B. A. Marlow" and she signed "Mrs. Homaesille Marlow." She examined the check (State's Exhibit No. 1) signed Mrs. B. A. Marlow as maker and stated that it was not her signature and further that she did not authorize anyone to sign the name of Mrs. B. A. Marlow to said check.

Zana Stanley testified that she was employed in the check division of the district attorney's office; that they had had numerous checks referred to their office with appellant's name on many of them; that on April 14, 1955, while he was in her office concerning them she suggested that he give her some specimens of his handwriting; that he voluntarily wrote the London letter which contains all the letters of the alphabet and also wrote several checks which were copies of checks they had in their files. These specimens of appellant's handwriting were admitted in evidence without objection and marked State's Exhibits Nos. 8 through 15. She further testified that he wrote the above mentioned specimens with his right hand and at that time told her that he could not write with his left hand.

E. N. Martin of the Questioned Documents Section in the Identification Laboratory of the Department of Public Safety testified that he had examined State's Exhibits Nos. 1 through 5 and also State's Exhibits Nos. 8 through 15. He further testified: "In examining the handwriting on the face of the five checks, State's Exhibits 1 through 5, * * * I noticed, * * * that it slanted in what we term a left back-hand slant; * * * to the left of vertical. From my past experience, I have learned that only a very small percent of people write in a back-hand slant naturally and freely. * * * With that in mind, in this comparison I necessarily have to go further into the finer details of the handwriting, such as the form of the little letters, the location of the "i" dots, the crossings, the shape of the connecting links, the spacing between the letters, the proportionate size of the capital letters in relation to the little letters, the form of writing of the date, spelling of a word or writing in the amount on the check, or the manner in which it is written, and to the direction of the beginning and ending strokes of the individual letters and the line quality and speed of writing. I consider all of that in my comparison. I concluded the writing on the face of the five checks was disguised writing * * * — I found a combination of characteristics of writing appearing on the face of the checks (State's Exhibits Nos. 1 through 5) that also appeared in the right handwriting on State's Exhibits No. 8

through 15. This combination was large enough for me to conclude that the person writing the specimens with his right hand, on State's Exhibits 8 through 15, was the same person that did the writing on the face of the checks 1 through 5 with his left hand. * * * In this case, it is obvious to me the person was attempting to cover up identity by writing with his left hand on the face of those five checks. The slow deliberate movement of the pen, the unnatural tremor, all indicated that it was written with the left hand and slanted principally back to the left of vertical. I mean, by vertical, as straight up and down; the left-handed writing on the face of the checks, most all of it, slanted back to the left of vertical. Q. Now, Mr. Martin, I believe you have testified then to some nine points of comparison and similarity between the questioned documents and the known samples, is that correct, sir? A. Yes, sir." He then expressed the opinion that the checks marked State's Exhibits Nos. 1 through 5 were written and signed by the same person and that the person endorsing said checks was not the person who wrote the face of them. He further expressed the opinion that the person who wrote State's Exhibits Nos. 8 through 15 was the same person that wrote checks marked State's Exhibits Nos. 1 through 5.

Appellant testifying in his own behalf denied writing the checks marked State's Exhibits Nos. 1 through 5 and stated that he never saw them before the trial; he further testified that he voluntarily wrote State's Exhibits Nos. 8 through 15.

The evidence is sufficient to warrant the jury's conclusion that the appellant is guilty as charged.

Appellant contends that there is a fatal variance between the allegation that the appellant forged the signature of Mrs. B. A. Marlow and the proof by the witness Homaesille Marlow that she did not give anyone authority to sign the name of Mrs. B. A. Marlow because there was no proof that Homaesille Marlow was the same person as Mrs. B. A. Marlow.

The testimony of Homaesille Marlow that she had a checking account in the National Bank of Fort Sam Houston in the name of "Bernard A. Marlow, Jr. or Mrs. B. A. Marlow" and that on her husband's personal account he signed checks "Mr. B. A. Marlow" and she signed "Mrs. Homaesille Marlow" and that she did not authorize anyone to sign the name of Mrs. B. A. Marlow to the check marked State's Exhibit No. 1 is suffi-

cient to support the allegation that the appellant forged the name of Mrs. B. A. Marlow to said check.

Appellant insists that there is no evidence corroborating the testimony of the accomplice Castillo as to the commission of the offense of forgery, that is, the act of signing the name of Mrs. B. A. Marlow, with which he is here charged.

The witness Martin, Examiner of Questioned Documents, Department of Public Safety, while testifying expressed the opinion that the person who wrote the instruments marked State's Exhibits Nos. 8 through 15, admittedy written by the appellant, was the same person that wrote the face of the check marked State's Exhibit No. 1. This testimony sufficiently corroborated the testimony of the accomplice Castillo showing appellant's commission of the offense charged.

Proof by comparison of appellant's handwriting together with the testimony of the witness Castillo that he saw appellant write the face of the check (State's Exhibit No. 1) is sufficient to take the case out of the category of proof only by comparison of handwriting. Cooper v. State, 136 Texas Cr. Rep. 498, 126 S.W. 2d 974.

It is insisted that the court erred in permitting the state to lay a predicate to impeach appellant upon an immaterial and collateral issue by requiring him to testify on cross-examination that he didn't write checks unless they were covered by sufficient funds in the bank to pay them and that all of his checks were good and to deny that he had had to go to the district attorney's office and make good some of his checks which had bounced back, and then permit the state in rebuttal to introduce testimony that numerous checks of his had been turned over to the check division of the district attorney's office.

The record shows that the appellant while testifying in his own behalf on direct examination stated: "I had a legal bank account, my checks did not bounce," "I have had all my checks covered, I do not write a check unless I can cover it," and that he had never had any trouble with any of his checks. Armando Castillo, the first witness to testify in the case, testified without objection that appellant's checks "were never good." The witness Stanley in addition to her testimony hereinabove shown testified in rebuttal without objection that she had received in the office "NSF" checks written by the appellant, and on cross-

examination she testified that she had had nine complaints concerning such checks in about three years.

The admission of the complained of testimony is not cause for reversal in that the same evidence, in substance, was before the jury by other testimony without objection. 4 Texas Jur. 587, Sec. 414; Hughes v. State, 163 Texas Cr. Rep. 224, 289 S.W. 2d 768; Lowrey v. State, 163 Texas Cr. Rep. 241, 290 S.W. 2d 532.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

DAVIDSON, Judge, dissenting.

The corroboration of the accomplice witness Castillo and, therefore, the guilt of this appellant depend upon the testimony of an expert handwriting witness who, upon comparing the alleged forged check with a specimen of the handwriting of appellant, testified that the appellant wrote the forged check. The expert witness did not stop with expressing his opinion that appellant wrote the forged check but went further and testified that in doing so he attempted to disguise his handwriting and to cover up his identity by writing the forged check with his left hand.

The legislature of this state recognized that it was competent for an expert to give his opinion upon a comparison of handwriting (Art. 731, C.C.P.). An express limitation, however, was placed upon the probative value of such evidence by the provision in that statute that proof by comparison, alone, would not be sufficient to establish the handwriting of a witness who denies his signature under oath.

Speaking of that statute and the subject of expert testimony, this court, in De Vere v. State, 100 Texas Cr. Rep. 61, 271 S.W. 912, said:

"* * * our Legislature was not unmindful of the fact that expert testimony on handwriting is very uncertain and unreliable, and at most a question in which there could be wide room for much difference, and, in view of such information, passed the above statute for the purpose of covering just such cases as we have under consideration."

This court appears, there, to have been voicing again what had been said earlier by its predecessor in Jones v. State, 7 Texas App. 457 and Heacock v. State, 13 Texas App. 97.

To my mind, those expressions have a fitting application here. In the instant case the expert witness appeared to have had no difficulty in determining that the forged check was written with the left hand, as the accomplice testified. Just how he was able to make that deduction I am unable to understand, but I am not an expert on handwriting. So the accomplice witness who testified that the forged check was written by the appellant with his left hand is supported in that particular by the·expert witness, if such testimony can support or corroborate the accomplice—which question will be discussed later on.

Apparently, no comparison of handwriting was necessary for the expert witness to arrive at the conclusion that the forged check was in the handwriting of a person writing left-handed. This conclusion of the expert witness appears to have been reached solely from an examination of the writing on the check.

The question next arises: Was appellant the left-handed writer of the forged checks?

The state was in possession of an authentic specimen of appellant's handwriting, written with his right hand.

Upon the expert witness' comparison of the right-hand writing with the left-hand writing on the check, it was his expressed opinion that appellant was the forger of the check and that, in so forging the check, appellant disguised his handwriting and was attempting thereby to cover up his identity.

I am at a loss, as I have said, to understand how the left-hand writing of a person can be identified by his right-hand writing, but I am not an expert on handwriting. Neither can I understand why the expert witness was authorized to express his opinion as to the motive and intent of the appellant in using his left hand in writing the forged checks.

With these observations, I come to a discussion of the proposition of law involved:

As pointed out, Art. 731, C.C.P., authorizes an expert to express his opinion by a comparison of handwriting but makes an express limitation of the probative value of the expert opinion

based upon a comparison of handwriting by the provision that "proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath."

Here, the appellant denied under oath that he signed or wrote the alleged forged check. The quoted provision of the statute was thereby made applicable, and a conviction could not be sustained unless corroborated by other testimony. De Vere, supra.

So then, a conviction could not be had, here, upon the testimony of the expert handwriting witness unless corroborated by other evidence.

The only evidence, here, that could be utilized to corroborate the testimony of the expert witness was that of the accomplice witness, or, stated another way, the only evidence which could be used to corroborate the accomplice witness was that of the expert witness.

The question of law, then, is this: May these two witnesses corroborate each other?

The reason a conviction cannot be had upon the uncorroborated testimony of an accomplice is that the statute says so. Art. 718, C.C.P. The testimony of an accomplice, uncorroborated, therefore establishes no fact.

The testimony of Castillo, then, that appellant forged the check cannot, alone, show that he did do so.

Art. 731, C.C.P., says that when the accused denies his signature under oath, the uncorroborated testimony of the expert witness to the contrary is not sufficient to establish the handwriting of the accused.

The unsupported testimony of the expert witness, here, would not authorize a finding that appellant signed the forged check.

Appellant's guilt, then, could not be shown solely by the testimony of either the accomplice or the expert witness. Such being true, neither one could corroborate the other, for to do so would give to the testimony of either the effect of establishing as a fact that appellant forged the check.

One accomplice cannot corroborate another. 18 Texas Jur.,

Sec. 169, p. 280. Such is true for the reason that the testimony of neither one establishes, of and within itself, any fact.

While the expert witness is not an accomplice to the crime, yet the testimony of the expert witness in the instant case was necessary to be corroborated the same as an accomplice, before a conviction would be authorized thereon.

It follows that, in so far as establishing as a fact that appellant signed the forged check, the unsupported testimony of the expert witness did not do so here. The testimony of the expert witness, then stands in the same legal category as if he were an accomplice witness. To accept the testimony of the expert witness as corroborating the accomplice would be to give to that testimony probative value which the statute expressly forbids—which is that the unsupported testimony of the expert witness is not sufficient, under the facts here presented, to establish the handwriting of the accused.

By the same reasoning, the testimony of the accomplice—being, itself, without probative value—could not be used to corroborate the expert witness in stating that appellant did forge the check.

The evidence being insufficient to show that appellant forged the check as charged, the judgment ought to be reversed and the cause remanded.

I have been unable to find any case in point, nor have I been able to reach a conclusion, upon the question of whether handwriting with the right hand may be the basis for comparing handwriting claimed to have been done with the left hand. Or, stated another way, when it is determined that the forged instrument was made by writing with the left hand, must not the writing used as the basis for comparison be also made with the left hand? For the reasons mentioned, that question is not here discussed.

I respectfully dissent to the affirmance of this case.